711 P.2d 915

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**David Lawrence PETERSON,
Defendant-Appellant.**

**No. 8589.**

Court of Appeals of New Mexico.

Dec. 3, 1985.

Certiorari Denied Dec. 27, 1985.

Certiorari Denied March 3, 1986.
See 106 S.Ct. 1279.

Paul G. Bardacke, Atty. Gen., Alicia Mason, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

David Lawrence Peterson, Santa Fe, Pro se.

## OPINION

GARCIA, Judge.

Defendant was convicted of aggravated burglary with a firearm enhancement, NMSA 1978, Sections 30–16–4(A) (Repl. Pamp.1984) and 31–18–16 (Repl.Pamp. 1981); aggravated assault with a firearm, NMSA 1978, Sections 30–3–2(A) (Repl. Pamp.1984) and 31–18–16, and larceny over $100.00 in violation of NMSA 1978, Section 30–16–1 (Repl.Pamp.1984). In his pro se docketing statement defendant claimed some thirty-nine points of error. Of the issues briefed, defendant's complaints can be divided into three main categories: 1) sufficiency of the evidence; 2) whether the trial court abused its discretion in denying defendant's motion to discharge his attorney; and 3) whether the trial court abused its discretion in denying defendant's request for a continuance. Other issues

raised in the docketing statement were not briefed; they are deemed abandoned. *State v. Henderson,* 100 N.M. 260, 669 P.2d 736 (Ct.App.), *cert. denied,* 100 N.M. 259, 669 P.2d 735 (1983). We affirm the convictions.

## SUFFICIENCY OF EVIDENCE

This court has previously articulated the test for sufficiency of the evidence in a criminal case. "[W]e must determine whether there is sufficient evidence to justify a rational trier of fact to find beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Carter,* 93 N.M. 500, 503, 601 P.2d 733, 736 (Ct.App.) *cert. denied,* 93 N.M. 683, 604 P.2d 821 (1979). Defendant argues that there is insufficient evidence to sustain his conviction, and directs our attention to the claimed absence of evidence. Specifically, defendant argues that fingerprints which should have been on the gun and radio were neither taken nor preserved, and that the state failed to trace the ownership of the weapon. This court does not weigh the evidence, but reviews the record to determine whether the evidence supports a conviction. We must view the evidence in the light most favorable to the prevailing party, resolving all conflicts therein and indulging all permissible inferences in favor of the jury's verdict. *State v. Tovar,* 98 N.M. 655, 651 P.2d 1299 (1982); *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978); *State v. Lucero,* 88 N.M. 441, 541 P.2d 430 (1975).

## FACTS

■ The facts favorable to the state disclose that during the late evening hours of August 2, 1984, John Eder, security guard for Albuquerque North Auto Sales, found a door to the office trailer unlocked. As he began to investigate the exterior of the trailer, defendant stepped out of the darkness, pointed a gun at him and threatened to kill him. Defendant was holding a radio in one hand and a cocked gun in the other. Defendant told Eder to "give him a break" a:.·' said he needed money because his wife had cancer. A noise distracted defendant, and Eder was able to disarm him and, following a scuffle, subdued and handcuffed defendant. At the time of defendant's arrest, he had in his possession a money bag containing cash and checks in excess of $100.00, keys, a radio and other items all belonging to Albuquerque North Auto Sales.

The investigation disclosed that entry into the victim's office had been accomplished by breaking a window. Blood was found on the window curtains and inside the office. At the time of arrest, defendant's hand was lacerated and bleeding. Testimony presented by the state's expert serologist showed the existence of characteristics common to blood samples taken at the crime scene and defendant's blood. Defendant was identified as the assailant by Mr. Eder. Another witness saw and identified defendant as the individual who fought with Eder, and the arresting officer identified defendant as the person arrested at the crime scene. The owner of the business establishment testified that defendant was not authorized to be on the premises on the night of the burglary. Considering the evidence under the appropriate standard of review, we conclude that there is ample evidence to support the convictions.

## WHETHER THE TRIAL COURT ERRED IN REFUSING DEFENDANT'S REQUEST TO DISCHARGE HIS ATTORNEY

Prior to his arraignment, defendant filed an entry of appearance and relying on *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), sought to represent himself in the criminal proceedings. The court examined defendant on his request to waive counsel, *State v. Montler,* 85 N.M. 60, 509 P.2d 252 (1973), and obtained information concerning his education, training, experience and familiarity with court proceedings. Defendant represented that he had earned his G.E.D. and had completed one year of college. He had studied and was familiar with criminal procedural rules, and had previously represented himself on felony charges. The trial court determined that defendant was competent to act as his own attorney and,

pursuant to defendant's request, allowed him to appear in a pro se capacity. During a subsequent motion hearing, the court reminded defendant that he was under no obligation to represent himself, but was entitled to court appointed counsel if he could not afford his own attorney. The court inquired about defendant's self-representation, and learned that defendant was satisfied. The case was set for jury trial on April 1, 1985. Two working days prior to the commencement of the trial, defendant filed a motion to withdraw as his own attorney and for a continuance. Defendant represented that he had been ill and was unable to handle his own defense. He informed the court that he had retained the services of Counselor Edward Chavez. Prior to allowing Mr. Peterson to withdraw as his own attorney, and due to the court's concern that the request may have been motivated by defendant's intent to delay the trial, the court spoke with attorney Chavez:

> Court: Understand the rules of a case like this, Mr. Chavez, once you enter your appearance, you are in it for the duration, in other words, until it is all over. I won't be receptive to any motion to withdraw if your financial arrangements with Mr. Peterson don't pan out as anticipated or if you have any personality problems with him, or anything else, not that I anticipate you will.

Similarly, the court spoke with Mr. Peterson:

> Court: Mr. Peterson, I want you to know that I'm pleased that you got yourself a lawyer, but I'm not going to be interested in any attempt to fire Mr. Chavez or delay the trial or horse the matter around.
>
> Defendant: No, no. Mr. Chavez is a good man. I have confidence in him.
>
> Court: That's fine.

The court granted defendant's request for withdrawal and a continuance and rescheduled the trial. Shortly before the date of the rescheduled trial, Mr. Chavez filed a motion to withdraw as counsel as-serting that he had been fired by defendant. Defendant represented that fee arrangements, personality conflicts and disputes around trial strategy compelled him to fire his attorney. The court conducted a hearing on defendant's motion on April 19, 1985, at which time defendant stated that he had recovered from his illness and now wished to represent himself, and further, that he would need another continuance to prepare for trial. The court reminded defendant and counsel of the conditions imposed on them at defendant's previous request for a continuance, and indicated the trial would proceed as scheduled. Defendant objected to having Mr. Chavez represent him, and wanted to represent himself. The court consented to allow defendant to conduct his own defense, but directed that Mr. Chavez remain available as standby counsel in the event defendant wished to consult with him. Defendant again objected to having Mr. Chavez remain as standby counsel. While the court and the attorneys were discussing the propriety of allowing Mr. Chavez to be excused altogether, defendant once again changed his mind and stated that he would be prejudiced by not having Mr. Chavez present. The following colloquy ensued:

> Defendant: At this late point in the game, your honor, I feel that I would be at a disadvantage and I would be denied due process of law if he [Mr. Chavez] didn't remain.
>
> Court: Well now, are you asking the court to have Mr. Chavez remain? You have to make up your mind. Are you asking the court—
>
> Defendant: Yes. Let Mr. Chavez, allow Mr. Chavez, I have no other alternative other than allowing Mr. Chavez to remain. I have no alternative in the matter because he had me off half-cocked in this thing.
>
> .     .     .     .     .
>
> Court: [I] don't know what he [defendant] wants to do either. In one breath he says he doesn't want Mr. Chavez around, and in the next breath he says he wants him.

Defendant: I don't like to seem like I'm fickle, in regards to this, but he had me on a string.

Court: I want to know. Do you want me to keep him [Chavez] here?

Defendant: Keep him, your honor, its too late to change now.

Pursuant to this last request, the court did not allow Mr. Chavez to leave. Mr. Chavez remained available for consultation on a standby basis. Defendant proceeded to conduct his own defense, but did consult with Mr. Chavez at various times during the course of the proceedings.

■ Defendant complains that the court erred in refusing to allow Mr. Chavez to withdraw. This complaint is frivolous. One ought not be heard to complain because the very relief he requested was granted. *Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (Ct.App.1977) (where error claimed arose out of plaintiff's requested instructions, plaintiff will not profit from own error on appeal); *Platero v. Jones*, 83 N.M. 261, 490 P.2d 1234 (Ct.App.1971) (plaintiff may not complain on appeal that his requested findings were accepted).

■ The Sixth Amendment grants an accused the right to assistance of counsel. The amendment contemplates that counsel will be an aid or benefit to a willing defendant. Just as surely as a defendant has a right to counsel, he has the right to be free from unwanted counsel. A waiver of one's right either to have counsel or to represent oneself must be clearly stated. It must be knowing, intelligently and voluntarily made. *Faretta v. California*. Here, the record shows defendant's position on proceeding pro se changed at least four times. Conduct indicating that defendant is vacillating on self-representation may constitute a waiver of his right. *Brown v. Wainwright*, 665 F.2d 607 (5th Cir.1982); *United States v. Bennett*, 539 F.2d 45 (10th Cir. 1976).

■ Defendant initially chose to waive counsel and the court ruled he was competent to represent himself. He subsequently withdrew his waiver and retained counsel. Later, he fired his attorney and indicated a preference to proceed pro se. When the court indicated that counsel would remain available in a standby capacity, defendant initially objected, but thereafter, indicated he would be prejudiced if his attorney were allowed to leave. Defendant's position is reminiscent of Socrates' cross-examination of Euthyphro, who became so entangled in his own conflicting position and statements, that he finally told his examiner: "But, Socrates, I really don't know how to explain to you what is in my mind. Whatever statement we put forward always somehow moves round in a circle, and will not stay where we put it." Plato's Dialogues, *Euthyphro, Apology and Crito* translated by F.J. Church (1983). Similarly, defendant's position moves round in a circle and does not stay put. We find no error in the trial court's ruling.

## WHETHER THE COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR A CONTINUANCE

■ In pretrial proceedings, the court specifically reminded defendant of his obligation to subpoena witnesses and to have then available for court proceedings. Three days prior to the first trial date, defendant requested the court vacate the proceedings and grant a continuance so that his newly retained attorney have an opportunity to prepare for trial. The court granted defendant's motion, but was careful to lay the ground work to prevent further delays in the court proceedings. Prior to vacating the first trial setting, the court specifically discussed with defendant and his attorney the likely result of other requests to delay the trial. Defendant had approximately four months to prepare his defense, and was on bond for at least one-half that time. While free on bond, defendant had access to, and was provided discovery information by the state. Defendant was free to contact his witnesses and to arrange for their testimony. Prior to his re-arrest, he had access to whatever research materials were appropriate or necessary. Under these circumstances, the

court's denial of defendant's motion for an additional month's continuance was not an abuse of discretion. *See United States v. Lamb,* 575 F.2d 1310 (10th Cir.1978), *cert. denied,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978) (no abuse of discretion when attorney for accused has five weeks to prepare for trial). Defendant had ample time to prepare for his own defense. Any lack of preparedness on his part was due to his own dilatoriness. *State v. Deats,* 82 N.M. 711, 487 P.2d 139 (Ct.App.1971). We have previously determined that it was not error for a trial court to refuse defendant's request for a continuance when "[a] review of the record shows that the circumstances upon which he bases his claim can only indicate that the defendant alone was responsible for whatever transpired." *Id.* at 714, 487 P.2d 139. Defendant did not raise an alibi defense nor does he demonstrate how the absence of any key witness was critical to his defense. *State v. Perez,* 95 N.M. 262, 620 P.2d 1287 (1980). He fails to demonstrate how the state is in any way responsible for his own inability to locate research materials which were purportedly stored at his girl friend's residence. Finally, defendant argues that lack of access to the detention center's law library precluded him from adequate case preparation. The record, however, indicates defendant's own lack of due diligence in seeking to obtain access to research materials. *See State v. Pruett,* 100 N.M. 686, 675 P.2d 418 (1984). Upon defendant's request for access, the court granted his motion.

The trial court has dual responsibilities. Not only should the court grant defendant a right to a fair trial, but the court is also required to provide for the orderly and expeditious processing of litigation. In meeting this second responsibility, the court seeks to avoid delays which prevent the efficient and expeditious disposition of cases. In this case, the court clearly met both its responsibilities in providing defendant with a fair and full trial, and insuring that cases assigned to the court's docket were brought to an early and orderly disposition.

The trial court is affirmed in all respects. IT IS SO ORDERED.

WOOD and ALARID, JJ., concur.