2005-NMCA-064

112 P.3d 1119

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Clayborn S. VINCENT, Defendant–
Appellant.**

No. 23,832.

Court of Appeals of New Mexico.

March 24, 2005.

Certiorari Granted, No. 29,174,
May 20, 2005.

Corrected June 8, 2005.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Sujatha Baliga, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} This case raises issues pertaining to (1) whether Defendant's court-appointed attorney had a conflict of interest, (2) whether Defendant made a valid waiver of his Sixth Amendment right to counsel, (3) whether Defendant was denied his Sixth Amendment right to effectively represent himself, (4) whether Defendant made a valid plea of no contest to the charges while representing himself, and (5) whether Defendant received the effective assistance of standby counsel. We find no error and affirm Defendant's judgment and sentence.

## BACKGROUND

{2} The State alleged that on December 1, 2001, Defendant pointed a compound hunting bow loaded with a razor-tipped arrow at four victims and threatened them, while in the company of a co-defendant. He was charged with four counts of aggravated assault with a deadly weapon and one count of conspiracy to commit aggravated assault with a deadly weapon. An attorney on contract with the public defender department was appointed to represent Defendant. However, Defendant represented himself at trial with standby counsel after the district judge granted his motion to represent himself, accepted his waiver of counsel, and granted his attorney's motion to withdraw. On the second day of trial, Defendant decided he wanted to plead no contest to the charges, and the district

judge allowed him to do so. Defendant then filed a motion to withdraw his plea, which the district judge denied. Defendant appeals.

## COUNSEL'S ALLEGED CONFLICT OF INTEREST

{3} Defendant contends that his attorney and an attorney for the co-defendant were members of the same law firm representing conflicting interests at a hearing on the State's petition for an extension of time to bring the case to trial under Rule 5–604 NMRA (providing generally that the district court must commence trial within six months after arraignment, but that for good cause shown, a district judge may extend time for commencement of trial for three months). Defendant argues that since members of the same law firm are treated as one attorney for conflict of interest purposes under Rule 5–105 NMRA, and he did not waive the conflict, he was denied his constitutional right to his attorney's undivided loyalty. *State v. Joanna V.*, 2004–NMSC–024, ¶ 5, 136 N.M. 40, 94 P.3d 783 (" 'The right to effective assistance of counsel free from conflicts of interest is guaranteed by the Sixth Amendment to the United States Constitution.' ") (quoting *State v. Sosa*, 1997–NMSC–032, ¶ 20, 123 N.M. 564, 943 P.2d 1017); *see also State v. Martinez*, 2001–NMCA–059, ¶ 24, 130 N.M. 744, 31 P.3d 1018 (stating Sixth Amendment right to counsel includes the right to counsel's undivided loyalty).

{4} When the record demonstrates that an actual conflict rendered counsel's assistance ineffective, prejudice is presumed, and the claim can be addressed for the first time on appeal. *Martinez*, 2001–NMCA–059, ¶¶ 24, 26, 130 N.M. 744, 31 P.3d 1018. "However, to invoke such a presumption of prejudice, there must be an actual, active conflict that adversely affects counsel's trial performance; the mere possibility of a conflict is insufficient." *Id.* ¶ 24. We review de novo whether there is a conflict of interest and whether Defendant is entitled to a presumption of prejudice. *Churchman v. Dorsey*, 1996–NMSC–033, ¶ 11, 122 N.M. 11, 919 P.2d 1076.

{5} An attorney on contract with the public defender department was appointed to represent Defendant, and an attorney from the public defender department originally represented the co-defendant. The charges against Defendant and the co-defendant were ordered consolidated without objection, and on June 20, 2002, the joint trial was scheduled to commence on July 29, 2002, on a trailing docket. However, on July 11, 2002, the co-defendant's attorney was allowed to withdraw because of workload problems in the public defender's office, and a new attorney on contract with the public defender department was subsequently appointed to represent him. As a consequence, the consolidated cases were taken off the July 29, 2002, trailing docket.

{6} The State therefore filed a petition on July 23, 2002, under Rule 5–604 asking for a three-month extension of time to bring Defendant's case to trial because the deadline to bring his case to trial expired at the end of the month. The petition states that Defendant's attorney opposed the requested extension.

{7} The hearing on the State's petition was held on July 29, 2002. The co-defendant's new attorney said that since he was assigned to the case the previous week, he told the district attorney that he was going to need an extension of time to prepare. He therefore did not oppose the State's petition. Defendant's attorney argued against granting the petition. She had cleared her calendar for the trial, and she remained ready to proceed. She pointed out that since his arrest on December 5, 2001, Defendant had been incarcerated because he was unable to post the required $15,000 cash bond. He would have been entitled to be brought to trial within six months, but co-defendant's original attorney raised the issue of his competence. Since the case had already been taken off the July trial docket, Defendant's attorney asserted that the charges against Defendant should be dismissed. Finding good cause under the circumstances, the district judge granted the State's petition, extending the time to bring to trial through October 29, 2002. Defendant remained in custody when the district judge refused to modify the existing conditions of release.

466

{8} The record does not establish that Defendant's attorney and the co-defendant's new attorney were partners of the same law firm during the applicable time, from July 2002 through September 2002. In fact, the record establishes that in July 2002, Defendant's attorney was using P.O. Box 4280 in Alamogordo, New Mexico, and the co-defendant's new attorney was using P.O. Box 4065 in Alamogordo, New Mexico.

{9} Defendant asks us to consider documents attached to his brief-in-chief and reply brief, which are not part of the record, to establish the factual basis of his claim that his attorney and co-defendant's attorney were partners during the applicable time frame. We decline to do so. Since at least 1928, the rule has been that unless the facts necessary to consider a contention are in the record on appeal, we cannot consider the claim. *See State v. Manzanares,* 33 N.M. 573, 574, 272 P. 565, 565 (1928) (declining to consider sufficiency of evidence "because the record does not contain a bill of exceptions, setting forth the evidence"); *see also State v. Wood,* 117 N.M. 682, 687, 875 P.2d 1113, 1118 (Ct.App.1994) (refusing to consider an exhibit to a brief that was not part of the record proper); *Martinez,* 2001–NMCA–059, ¶ 20 n. 1, 130 N.M. 744, 31 P.3d 1018 ("Because ... allegations are outside the record proper on appeal, we do not consider them in this opinion.").

{10} The factual basis for Defendant's claim is not found in the record on appeal. We therefore reject it. *See Joanna V.,* 2004–NMSC–024, ¶¶ 7, 17, 136 N.M. 40, 94 P.3d 783 (stating that child failed to demonstrate on the record that her attorney's representation was compromised by an actual, active conflict of interest); *see also State v. Jensen,* 1998–NMCA–034, ¶ 18, 124 N.M. 726, 955 P.2d 195 ("Without a factual basis in the record, even a double-jeopardy claim must be rejected.").

## WAIVER OF COUNSEL

{11} Defendant argues that his Sixth Amendment right to counsel was violated because his decision to waive counsel and represent himself was involuntary. Defendant had a Sixth Amendment right to counsel to represent him. As a corollary, Defendant

also had a Sixth Amendment right to reject counsel and represent himself. *See State v. Rotibi,* 117 N.M. 108, 110, 869 P.2d 296, 298 (Ct.App.1994); *see also Faretta v. California,* 422 U.S. 806, 836, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Gideon v. Wainwright,* 372 U.S. 335, 345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Because Defendant expressed a desire to represent himself, the district judge was required to determine if Defendant was making a "knowing and intelligent" waiver of his right to an attorney and understood fully the dangers of self-representation. *State v. Plouse,* 2003–NMCA–048, ¶ 22, 133 N.M. 495, 64 P.3d 522; *Rotibi,* 117 N.M. at 108, 869 P.2d at 298; *State v. Castillo,* 110 N.M. 54, 57, 791 P.2d 808, 811 (Ct.App.1990) (internal quotation marks omitted). Further, because Defendant was given a clear choice between waiver of counsel and another course of action, the district judge was required to inquire into the voluntariness of Defendant's decision to represent himself. *See Plouse,* 2003–NMCA–048, ¶ 22, 133 N.M. 495, 64 P.3d 522; *Castillo,* 110 N.M. at 56, 791 P.2d at 810. We review de novo whether Defendant's decision to waive counsel was knowingly, intelligently, and voluntarily made. *Plouse,* 2003–NMCA–048, ¶ 21, 133 N.M. 495, 64 P.3d 522.

{12} Defendant's specific argument here is that when his court-appointed attorney was allowed to withdraw, he was presented with a "Hobson's choice" between continued pretrial confinement for an additional four months before newly appointed counsel could be obtained for him or keeping the existing trial setting but with self-representation. Whether a waiver of counsel is valid depends on the facts and circumstances of each case. *See id.* ¶ 27; *State v. Aragon,* 1999–NMCA–060, ¶ 11, 127 N.M. 393, 981 P.2d 1211. We therefore set forth in detail the facts leading to Defendant's decision to represent himself and the substantial efforts undertaken by the district judge to ensure that Defendant's waiver was knowing, intelligent, and voluntary.

{13} After granting the State's petition for an extension of time to commence trial on July 29, 2002, the district judge ordered that

the trial would commence on October 29, 2002. On September 17, 2002, Defendant's attorney filed a motion to withdraw. She stated that client-attorney communications had deteriorated beyond repair, that Defendant had verbally requested that her services be terminated, and that Defendant had written to several judicial agencies complaining about the representation he was receiving and asserting that there was "a conspiracy within the [T]welfth [J]udicial [District] against him."

{14} The motion was heard on September 25, 2002. Defendant's attorney told the district judge that two letters Defendant wrote in August 2002, complaining of her representation, were still being investigated. One letter was written to the Attorney General accusing people of the Twelfth Judicial District of engaging in a conspiracy. In part, it states that in a small community like Alamogordo, attorneys often work with each other in close proximity and exchange roles.

> These parties see each other in the community on a daily basis and are forced out of professionalism as well as civic duty, not to mention natural friendship, to be agreeable and get along. Just the presence of these courtesies would lead one to believe that working and living in this environment would lead to concessions because of the relationships forged in this environment.

The letter continues that such a judicial system is ineffective in dispensing impartial justice.

> In my specific case, the unprofessionalism has gotten to the point of falsified police reports, discovery being withheld, witnesses disappearing, and strategic stalling.

Defendant also wrote a letter to the federal public defender complaining about his representation. However, his attorney declined to disclose the contents of that letter because "it basically sets forth his entire defense."

{15} The district judge stated that if the motion to withdraw was granted, it would inevitably result in a postponement of the October trial setting. He advised Defendant that he was looking at January 2003 before trial could be reset and that he would remain incarcerated until trial because motions to review conditions of release had already been denied twice. When asked if he was aware of that, Defendant responded that he was and added, "I've got in my possession two Motions that I plan on filing this morning, as soon as [counsel] withdraws. One is a Waiver of Counsel, the other one is a Motion to Proceed Pro Se, and we'll go from there." Defendant asserted that it was his desire to represent himself and proceed with the trial setting in October. The district judge continued ruling on the motion to withdraw, took it under advisement, and consolidated it with the hearing on Defendant's expected motion to represent himself.

{16} Defendant's motion to proceed pro se and waiver of counsel were prepared in Defendant's own handwriting. They were filed that same day at the conclusion of the hearing. In the motion to proceed pro se, Defendant asserts that he has a constitutional right to appear and defend himself. The waiver of counsel he wrote states:

> I understand that I am charged with the following offenses: 4 counts of Agg. Assault–4th degree felonies, 1 count of conspiracy–4th degree felony under the law and that if I am found guilty I can be given a severe punishment, including imprisionment (sic) in the New Mexico Penitentiary and a fine.

> I understand that under the Constitution of the United States and the State of New Mexico, I have the right to be represented by a lawyer at all stages of the criminal case-before trial, at the trial itself, during proceedings to determine what sentence should be imposed if I am found guilty, and any appeal. I understand that if I am unable to, without undue hardship, to pay for all or a part of the expense of legal representation from available present income and assets, a lawyer will be furnished for me free of charge.

> After reading and writing all of the above, I hereby give up my rights to a lawyer in this case, and to have a lawyer furnished for me free of charge, and to have a lawyer from Otero County furnished free of charge if I cannot afford one.

At the end of the pleading Defendant prepared an acknowledgment for the district judge to sign which states, "I find that the Defendant knowingly, voluntarily and intelligently with full awareness of his rights, has waived his right to counsel."

{17} The continued hearing on counsel's motion to withdraw and Defendant's motion to proceed pro se was held on September 30, 2002. The district judge advised Defendant that he was considering appointing standby counsel as he had done in other cases where a defendant exercised his right to self representation.

And one of the things that stand-by counsel would be able to do is things like get subpoenas issued, arrange for them to be served, do things like request depositions and other practical things that are difficult to do for somebody that's not a lawyer, first of all, and doubly difficult for somebody to do without a lawyer that's in jail.

Defendant thanked the court for its help and added, "[y]es, sir, Your Honor, I'm fully competent to handle this. And please, please let me proceed pro se so that we can get this issue disposed of." Defendant added that he had no objection to a court-appointed stand-by counsel.

{18} During a recess, the district judge reviewed copies of *Rotibi* and *Castillo,* which were provided by the prosecutor. The district judge then carefully advised Defendant that representing oneself in the courtroom involved technical procedures and that Defendant would have to abide by the same standards in following the rules as an experienced attorney. Defendant was warned that he could fail to object to a question, fail to raise a particular issue or, in some other way, make some mistake that might result in the waiver of various issues. The district judge stated this was his concern and explained that "stand-by counsel is just there to answer questions that you might have and not keep you from making a mistake." Defendant responded:

Okay. I would like to go on the record for saying I fully understand, I'm competent, I'm intelligent, I don't watch TV. I won't miss anything, I guarantee that, because this is my case. And like I said earlier, I'm very serious about it.

It's my contention that if the D.A. was—was prepared to take this to trial and was confident with their case, they wouldn't be opposing me trying to represent myself.

{19} The district judge then ascertained that Defendant was thirty-nine years old with a high school GED. Defendant stated that he had been to three criminal trials in his life and while he did not represent himself in any of them, "on all of them [he] provided the fact-finding information." Defendant asserted he was familiar with the rules of evidence and the rules of criminal procedure in terms of the order of progress of a criminal trial. Defendant asserted that he understood that if he represented himself, he would not be able to complain about the competency of his representation to the appellate courts. Finally, the district judge reminded Defendant that a lawyer who represents himself has a fool for a client.

{20} The district judge advised Defendant that if his motive was to exercise his constitutional right to represent himself, he could not prevent him from doing so. On the other hand, if Defendant did not believe that the court had provided him with competent representation, a completely different issue was present. The district judge asked Defendant: "Do you want to represent yourself because you could not find anybody else, or are you doing this because the Court has not provided you competent representation?" Defendant answered, "I'm doing it because I don't think anybody else can represent me as good as I can, knowing the facts of my case."

{21} The district judge then made a finding that "Defendant knowingly, intelligently, and voluntarily in full awareness of his rights waived counsel" and the judge signed the acknowledgment Defendant prepared in his own handwriting on the waiver of counsel form. The district judge also said that Defendant's existing attorney "wants to withdraw and stay withdrawn." Defendant replied, "I fully concur with that."

{22} We hold that the district judge scrupulously complied with the requirements of *Plouse,* 2003–NMCA–048, ¶¶ 22–23, 133 N.M.

495, 64 P.3d 522, *Castillo,* 110 N.M. at 57, 791 P.2d at 811, and *State v. Chapman,* 104 N.M. 324, 327, 721 P.2d 392, 395 (1986) to insure that Defendant's waiver of his Sixth Amendment right to counsel was knowing, intelligent, and voluntary. In fact, on the facts before us, if the district judge had denied Defendant's right to proceed pro se, Defendant's constitutional right to represent himself would have been violated. *See Rotibi,* 117 N.M. at 111, 869 P.2d at 299 ("[O]nce it has been determined that the waiver of counsel was 'knowingly and intelligently' made by a defendant, as in this case, the court had no alternative but to allow Defendant to proceed on his own."). We further hold that Defendant was not presented with a "Hobson's choice" between appearing pro se and remaining incarcerated for four months. This record clearly demonstrates that Defendant affirmatively and freely chose to proceed to represent himself at trial without any coercion. *See Plouse,* 2003–NMCA–048, ¶ 31, 133 N.M. 495, 64 P.3d 522 (rejecting a defendant's claim that "he was presented with an 'impossible Hobson's choice' between appearing pro se or proceeding with incompetent counsel" where no matters of record supported a defendant's assertion that his counsel was incompetent or unprepared).

**DENIAL OF RIGHT TO EFFECTIVE SELF REPRESENTATION**

{23} Defendant contends that he was effectively unrepresented at trial because he was deprived of access to legal materials and his standby counsel was "virtually inactive." This raises a legal issue we review de novo while considering the proceedings as a whole. *See Lytle v. Jordan,* 2001–NMSC–016, ¶¶ 26, 28, 130 N.M. 198, 22 P.3d 666.

{24} Defendant filed a request for relief asking that the court provide "access to the tools needed to prepare and defend himself." The district judge held a hearing on October 16, 2002. Defendant said, "I was being—I was having trouble getting paper and pens and access to the law library. I think we've got that issue pretty much resolved. I'm still having a little problem getting a hold of some case law information that I need to prepare for the trial." Standby counsel, who was

appointed on October 10, 2002, told the district judge that the previous week, Defendant sent him an eighteen-page facsimile requesting copies of 156 cases. However, he did not have the ability to generate this number of photocopies in the time remaining before trial. The district judge stated that he had to balance Defendant's need to prepare with security at the detention center and he could not order the detention center to have a guard bring Defendant to the courthouse library at 8:00 a.m. and return him to the detention center at 5:00 p.m. so that he could read the cases in the hope of finding something he could use. The district judge implored,

> [I]f you have specific cases on specific issues [or] that you needed the support of a particular issue, I suggest that you discuss with your stand-by counsel what it is that you're trying to prove. And perhaps [stand-by counsel] is able to, with his experience, to tell you that okay, Case A, B, C, and D aren't going to tell you anything, you need a copy of Case E. And then that will help narrow your search.

> And since I don't know what you're seeking to do, I don't want to intrude in your pretrial preparation and compromise the confidentiality of that, so I can't give you any further guidance. All I can do is encourage Detention to give you reasonable access to the law library to make reasonable preparation.

{25} *Rotibi* could be interpreted to mean that an incarcerated defendant who represents himself is entitled to access to a law library because it cites *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) in discussing the defendant's argument that he had such a right. *Rotibi,* 117 N.M. at 111–12, 869 P.2d at 299–300 ("[T]he Supreme Court held that prisoners' rights to access the courts encompasses either adequate law library facilities or assistance of persons trained in the law."). However, *Rotibi* was not required to analyze the extent to which an incarcerated pro se defendant has a right to access to a law library because the trial court ruled that the defendant would be incarcerated in a facility with a law library

470

while representing himself. *Id.* at 112, 869 P.2d at 300.

{26} *Bounds* addressed a prisoner's *post-conviction* rights of access to legal materials to collaterally attack his sentence and challenge his conditions of imprisonment. 430 U.S. at 828, 97 S.Ct. 1491; *see Lewis v. Casey*, 518 U.S. 343, 350–51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (emphasizing that *Bounds* did not establish a right to a law library or to legal assistance, but the right of access to the courts, and stating that "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts' " (citation omitted)). In contrast, Defendant is a *pretrial* detainee who waived his constitutional right to court-appointed counsel and now argues he was denied access to legal materials to prepare his defense. While this precise situation has not been clarified by the United States Supreme Court, there appear to be two approaches.

{27} First, most federal courts have determined that an accused who refuses representation by counsel is not entitled to access to a law library. The reasoning seems to be that the state satisfies its obligation to an accused under the Sixth Amendment by providing counsel, and that the accused does not have a right to dictate an alternative form of assistance by choosing not to accept counsel's representation. *See, e.g., United States v. Taylor*, 183 F.3d 1199, 1205 (10th Cir.1999) (stating that a "prisoner who voluntarily, knowingly, and intelligently waives his right to counsel in a criminal proceeding is not entitled to access to a law library or other legal materials"); *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir.1996) (stating a prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library); *United States v. Smith*, 907 F.2d 42, 45 (6th Cir.1990) (stating that the state does not have to provide access to a law library to defendants who wish to represent themselves); *United States ex rel. George v. Lane*, 718 F.2d 226, 233 (7th Cir.1983) (stating that the state was not required to offer a

defendant law library access once it offered the defendant assistance of counsel, which defendant declined); *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir.1982) (stating *Bounds* right of access satisfied when state offered appointed counsel at its expense; defendant could not insist on avenue of his own choosing); *Kelsey v. Minn.*, 622 F.2d 956, 958 (8th Cir.1980) (holding that a prisoner's constitutional right of access to courts did not obligate officials to provide him with an adequate law library where alternative means of satisfying access to courts were available). At least one state agrees with the approach taken by the federal courts. *State v. Brandt*, 135 Idaho 205, 16 P.3d 302, 304 (Ct.App.2001) ("[A]ny prisoner who voluntarily, knowingly, and intelligently waives his or her right to counsel in a criminal proceeding is not entitled ... to alternative means of access to the courts, including access to a law library or other legal material.").

{28} A second approach is to recognize that a pretrial detainee who has exercised his constitutional right to represent himself nevertheless has a right to reasonable access to state-provided resources that will enable him to prepare a meaningful defense. *State v. Silva*, 107 Wash.App. 605, 27 P.3d 663, 674–75 (2001) states:

> [W]e conclude that [the Washington State Constitution] affords a pretrial detainee who has exercised his constitutional right to represent himself, a right of reasonable access to state provided resources that will enable him to prepare a meaningful pro se defense. What measures are necessary or appropriate to constitute reasonable access lies within the sound discretion of the trial court after consideration of all the circumstances, including, but not limited to, the nature of the charge, the complexity of the issues involved, the need for investigative services, the orderly administration of justice, the fair allocation of judicial resources (i.e., an accused is not entitled to greater resources than he would otherwise receive if he were represented by appointed counsel), legitimate safety and security concerns, and the conduct of the accused.

*Id.* (footnote omitted).

{29} Defendant has not argued that we should adopt the *Silva* approach as a

matter of our own state's constitutional law, and therefore we do not express any view on the matter. However, even if we were to adopt the *Silva* approach, it would not provide Defendant with any relief in this case. The district judge was sensitive to Defendant's constitutional right to represent himself and to his need to have access to materials to prepare his defense. He exercised his discretion in asking Defendant to consult with his standby counsel to determine which specific cases might assist him and which would not. This was eminently reasonable under the circumstances. Defendant stated he understood what the district judge was suggesting. However, he did not follow the district judge's suggestion, and the record fails to show that Defendant attempted to use any other alternative procedure for obtaining copies of the cases he wanted. Under these circumstances, he may not complain on appeal that he was denied access to legal materials necessary for his defense. *See State v. Peterson*, 103 N.M. 638, 643, 711 P.2d 915, 920 (Ct.App.1985) (noting that the defendant argued that lack of access to detention center's law library precluded him from adequately preparing for trial, but record showed defendant's own lack of due diligence in seeking to obtain access to research materials; when he asked for access to the detention center law library, it was granted); *see also State v. Brockenshire*, 26 Kan. App.2d 902, 995 P.2d 905, 909 (2000) ("When a defendant alleges a violation of his or her right to effectively represent himself or herself, the defendant is required to show actual injury to that right.").

## VALIDITY OF NO CONTEST PLEA

{30} Defendant argues his no contest plea is invalid, contending that when he let it be known on the second day of trial that he felt he was in over his head and not capable of further representing himself, he effectively revoked the waiver of his right to counsel, and standby counsel should have been required to assume defense of the case. He further contends he was placed in the impossible position of choosing between his constitutional right to a trial and his constitutional right to counsel. As such, Defendant contends his plea was not knowing and volun-

tary. In addition, Defendant contends the district judge accepted his no contest plea without establishing a factual basis for the plea. For all these reasons, he argues, reversible error was committed in denying his motion to withdraw his plea.

{31} We review the decision of the district judge in refusing to allow Defendant to withdraw his no contest plea for an abuse of discretion. *See State v. Moore*, 2004–NMCA–035, ¶ 10, 135 N.M. 210, 86 P.3d 635 (stating standard of review is an abuse of discretion when reviewing order denying motion to withdraw guilty plea made prior to sentencing). In this regard, "[a] trial court abuses its discretion when it acts unfairly or arbitrarily, or commits manifest error. A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given." *Id.* ¶ 11 (internal quotation marks and citations omitted). Defendant has not argued that any other standard applies to his motion to withdraw his guilty plea. Since we review each case on its own unique facts to determine if a no contest plea is valid, *see State v. Garcia*, 121 N.M. 544, 547, 915 P.2d 300, 303 (1996) (discussing guilty plea), we set forth in detail the facts leading up to Defendant's plea.

{32} Trial commenced on October 22, 2002, with Defendant representing himself. The co-defendant agreed to plead no contest the day before trial, and there was a hearing outside the presence of the jury concerning the scope of his cross-examination without violating his Fifth Amendment rights. Defendant was given the opportunity to discuss with standby counsel the scope of his proposed impeachment of the prosecution's witnesses. Defendant participated in voir dire, challenged prospective jurors for cause, and struck jurors from the panel pursuant to the rules of criminal procedure.

{33} After opening statements, two of the witnesses testified and they were cross-examined by Defendant. Defendant also attempted to impeach the co-defendant by calling him as his own witness.

{34} The following day, the trial continued with testimony from police personnel. After

the last officer testified about how a photographic line up was shown to the victims and Defendant identified, a recess was taken when Defendant said he anticipated a lengthy cross examination.

{35} After the recess, standby counsel stated that Defendant advised standby counsel "that he felt like he was at this point in this trial over his head and not capable of further representing himself." The only possible remedy standby counsel could recommend was for the court to find Defendant incompetent to continue representing himself, declare a mistrial, and retry the case with a new attorney. Counsel added that he did not think it was appropriate to request him to step in at this point of the proceedings and attempt to complete the trial. The district judge agreed, saying,

> Well, the answer is that [Defendant is] going to have to live with his choice to represent himself, and we're not going to change horses in the middle of the stream so to speak.
>
> I regret that—that the difficulties of self representation have only now manifested themselves in their full reality, but I—I cannot let the defendant or anyone create the circumstances to cause his or her own mistrial. That's not going to happen.

Standby counsel requested another recess "to discuss what we were discussing before we were called."

{36} Following the recess, out of the presence of the jury, the district judge announced that Defendant had advised the court he wanted to change his plea. Before proceeding further, however, the district judge assured himself that Defendant had an opportunity to discuss a change of plea with standby counsel. Standby counsel said:

> Your Honor, as I noted just before we had that last recess, Mr. Vincent expressed to me some concerns regarding that he felt incompetent to continue to represent himself, or unable to continue to represent himself in this matter. I expressed those to the Court.
>
> He's asked me what his options are. I've explained to him that he can proceed with this case and then to properly cross examine witnesses against him, or he has the right to stand up and change his plea.
>
> He—I've discussed with him that he is faced with five fourth-degree felonies. Carrying a felony is up to 18 months each, up to a $5,000 fine each, and that he may or may not be subject to a habitual offender prosecution, if he had prior felonies, that that would carry a one-year enhancement for each count.
>
> And Mr. Vincent—I've told him it was his decision to make that decision, and Mr. Vincent came back in here and made his decision (inaudible).
>
> If there's some specific matter that the Court wishes me to inquire of Mr. Vincent or discuss with Mr. Vincent further, I'll go, Your Honor.

{37} The district judge then advised Defendant:

> Mr. Vincent, there's a—a process that I go through and that every judge goes through in terms of someone changing their plea, and I use a written checklist for that purpose. It's designed to satisfy the Court that you understand the potential consequences of pleading—changing your plea and that you understand the Constitutional rights that you've giv[en] up by changing your plea.
>
> Now, this is the first time someone's changed their plea in the middle of a trial. That's happened before in this Court and many other courts, but it's the first time it's happened with me with someone who's self represented. And I—I want to make certain that you are—are doing this as a reasoned decision and not as a panic decision.
>
> I have to make a finding that you're doing this free and knowingly, intelligently, and voluntarily. And as we go through this, if you have any questions, you'll have the opportunity to consult with [standby counsel] about those questions.
>
> If you think you don't want to change your plea, you'll have an opportunity to tell me that as we go through this process.
>
> However, once we finish it, and then I'll go through this form, initial each paragraph, give it to your attorney, who will be

with you, and ask that you both sign it, and then I'll ask that you stand and swear to the fact that we did this in open court here today.

And after we get that far, there won't be any changing or (inaudible) later about your plea.

{38} Defendant thereupon advised the district judge that he wanted to change his plea to all the counts from not guilty to no contest. The following colloquy then occurred:

THE COURT: Mr. Vincent, do you understand what each of those five charges is all about, what the State would have to prove in order for you to be found guilty of each of those?

MR. VINCENT: Yes, sir.

THE COURT: Now, the range of possible sentences in this case, disregarding any question of habitual for the moment, is from a minimum sentence of some sort of probation up to a maximum of two years and a fine of $5,000 on each count, which could be consecutive.

So that would be times five, a maximum of ten years, and $25,000 on each count.

There is a possible sentence for probation up to ten years and fined $25,000. Do you understand that?

MR. VINCENT: Yes, sir.

THE COURT: Of course, each of those fourth-degree felonies is a basic sentence of 18 months, which can be increased by as much as one-third upon a finding of aggravated circumstances. That would make two years each and can be reduced by as much as one-third upon finding and ... any [mitigating] circumstances. So it's actually one to two years on each count. There is no mandatory minimum unless you get into habitual issues.

Now, do you understand how the sentence on each count is computed, Mr. Vincent?

MR. VINCENT: Yes, sir.

THE COURT: Now, if you are sentenced to a term of actual incarceration in the penitentiary, upon sentencing you will be required to serve a mandatory parole term of one year. And if you should violate that parole, you could be subject to additional incarceration for parole violation. Do you understand the mandatory one-year parole charge?

MR. VINCENT: Yes, sir.

THE COURT: In addition, if you have prior felony convictions within the last ten years, the Habitual Criminal Offender Act in New Mexico will apply.

Under that act, if you have one prior felony, your basic sentence on each count will be enhanced by one year. If you've had two prior felonies, your basic sentence on each count will be enhanced by four years. If you have three or more prior felonies, your basic sentence on each count will be enhanced by eight years, which cannot as a matter of law be suspended or deferred.

Do you understand the [provisions] of the Habitual Criminal Offender Act?

MR. VINCENT: Yes, sir.

THE COURT: All right. Now, Mr. Vincent, under New Mexico law, the penalty [provisions] for these offenses is the same whether you're found guilty upon a finding of guilt by a jury or by a plea of no contest or by a guilty plea. The maximum penalty is the same. Do you understand that?

MR. VINCENT: Yes, sir, I do.

THE COURT: Now do you understand, Mr. Vincent, that by pleading no contest at this point that you're waiving or giving up a number of your Constitutional rights?

MR. VINCENT: Yes, sir, I do.

THE COURT: All right. Do you understand that you're giving up your Constitutional right to a trial by jury? You can finish the trial today if you want to.

MR. VINCENT: Yes, sir, I do.

THE COURT: And you understand you're giving up that right?

MR. VINCENT: Yes, sir.

THE COURT: Do you understand that you have the right to be represented by an attorney at all stages of these proceedings and to have a Court-appointed attorney represent you free of charge if you cannot afford one, just as you have the right to represent yourself, that's your choice.

MR. VINCENT: Yes.

THE COURT: Do you understand you're giving up your right to have [standby counsel's] assistance through the balance of this trial?

MR. VINCENT: Yes, sir.

THE COURT: All right. Do you understand that when you give up the right to a trial, you're giving up the right to confront (inaudible) to confront and cross examine the witnesses against you?

MR. VINCENT: Yes, sir.

THE COURT: All right. And do you understand you're giving up your right to present evidence on your own behalf and to have the State confront witnesses of your choosing to appear and testify?

MR. VINCENT: Yes, sir.

THE COURT: Do you understand you're giving up your Constitutional right to remain silent and to be presumed innocent until proven guilty beyond a reasonable doubt?

MR. VINCENT: Yes, sir.

THE COURT: And is it your desire to go ahead and give up all of those Constitutional rights and persist in your plea of no contest in this case?

MR. VINCENT: Yes, sir.

THE COURT: Now, you understand that by doing this plea that you're giving up any legal defenses that you might have, any time limit violations, any claims of Constitutional defects that may have arisen in these proceedings, any of these pretrial motions, or any of that stuff. You're waiving or giving up whatever rights may have accrued under those matters? Do you understand that?

MR. VINCENT: Yes, sir.

THE COURT: Okay. Now, has anybody promised you anything, Mr. Vincent, to get you to change your plea in this Court?

MR. VINCENT: No, sir, they haven't.

THE COURT: Has anyone threatened you in any manner or applied any type of force, pressure, coercion to get you to change your plea?

MR. VINCENT: No, sir.

THE COURT: Are you today under the influence of any narcotic drug, controlled substance, alcoholic beverage, or any medications that might affect your competency?

MR. VINCENT: No, sir, I'm not.

THE COURT: Are you presently being treated for any mental illness?

MR. VINCENT: No, sir.

THE COURT: Are you satisfied with the services that you're asking to be provided as stand-by counsel in these proceedings?

MR. VINCENT: Yes, sir, I am.

THE COURT: Now, I need to make certain that you understand what a no contest plea means. A no contest plea means to me that you're not admitting committing these offenses, but you're telling me that you understand what the charges are all about, that you've made the choice of—to do this plea rather than continue with trial, and you acknowledge that if put to the burden, the State would be able to bring in witnesses and other evidence upon which the jury could find you guilty beyond a reasonable doubt. Is that your understanding of what we're doing by this no contest plea here today?

MR. VINCENT: Yes, sir.

THE COURT: The Court finds from the testimony, at least so far, that there is a factual basis for the plea and it's reasonable for the Defendant to enter his plea.

{39} After the change of plea was approved and the jury discharged, Defendant had another conference with standby counsel and standby counsel advised the district judge that Defendant wanted him to take over representing Defendant in the sentencing phase of the case. Defendant formally waived his constitutional right to represent himself further and agreed to proceed with standby counsel as his attorney for the balance of the case. Defendant then filed a motion to change his plea, which was denied.

■ {40} The district judge scrupulously insured that Defendant's plea was knowing, voluntary, and intelligent, and he did not abuse his discretion in refusing to set aside Defendant's plea. First, Defendant insisted on representing himself, and we have already

held that he made a valid waiver of his Sixth Amendment right to counsel. Once Defendant waived his right to counsel and insisted on his constitutional right to represent himself, it continued through to all subsequent proceedings, unless it was limited to a particular phase of the case or withdrawn. *See People v. Crayton*, 28 Cal.4th 346, 121 Cal. Rptr.2d 580, 48 P.3d 1136, 1145 (Ca.2002) ("Federal authority holds that once a defendant gives a valid waiver [of counsel], it continues through the duration of the proceedings unless it is withdrawn or is limited to a particular phase of the case."); *State v. Lovelace*, 140 Idaho 53, 90 P.3d 278, 289–90 (2003) (stating a competent election by a defendant to represent himself, once made, continues through all further proceedings in the case, unless appointment of counsel for subsequent proceedings is expressly requested or circumstances suggest that waiver was limited to a particular stage of the proceedings); *People v. Baker*, 92 Ill.2d 85, 65 Ill. Dec. 1, 440 N.E.2d 856, 859 (1982) (stating waiver of right to counsel, once made, carries through to all subsequent proceedings unless the defendant later requests counsel or other circumstances suggest that the waiver is limited in scope); *see also State v. Gonzales*, 1997–NMSC–050, ¶ 15, 124 N.M. 171, 947 P.2d 128 (stating a defendant is bound by his waiver of counsel unless he can prove the waiver was ineffective).

{41} Secondly, Defendant never expressly requested that he be allowed to rescind his waiver of counsel, and even if we were to construe Defendant's actions at trial as an express request to order a mistrial so counsel could represent Defendant at a new trial, it was not an abuse of discretion. *See Biglari v. State*, 156 Md.App. 657, 847 A.2d 1239, 1246 (Ct.Spec.App.2004) ("The decision whether to permit mid-trial substitution of counsel is left to the trial court's discretion.") (quoting *State v. Brown*, 342 Md. 404, 676 A.2d 513, 518 (1996) (emphasis omitted)). While an accused has a right to reassert a previously waived right to counsel, it is not without boundaries. One of the boundaries is the orderly administration of justice. *See United States v. Pollani*, 146 F.3d 269, 273 (5th Cir.1998) (reaffirming that a pro se litigant may not abuse the right to reassert a

right to counsel "by repeatedly altering his position on counsel to achieve delay or obstruct the orderly administration of justice"); *Stamper v. State*, 809 N.E.2d 352, 354 (Ind. Ct.App.2004) (stating trial courts have discretion to determine whether a defendant may abandon pro se representation and reassert the right to counsel, and setting forth "any disruption or delay in the trial proceedings which might be expected to ensue if the request is granted," as one of the factors to consider). It was not an abuse of discretion not to grant a mistrial after two days of trial simply because Defendant perceived the case was not going his way or "he felt like he was at this point in this trial over his head and not capable of further representing himself." *See Commonwealth v. Bryant*, 579 Pa. 119, 855 A.2d 726, 736 (2004) ("A criminal defendant who knowingly and intelligently waives his right to counsel so that he may represent himself at trial may not later rely upon his own lack of legal expertise as a ground for a new trial.").

{42} The district judge fully complied with the rules of criminal procedure in insuring that Defendant's plea was knowing, voluntary, and intelligent. *See* Rule 5–303(E) and (F) NMRA; *see also State v. Moore*, 2004–NMCA–035, ¶ 13, 135 N.M. 210, 86 P.3d 635 ("A guilty plea does not violate the Due Process Clause where it is made knowingly, voluntarily, and intelligently."). No threats, improper promises, or other forms of wrongful coercion induced Defendant to change his plea. Defendant's decision to plead no contest was his own, freely made, and he was fully aware of the consequences of his plea. There is no constitutional barrier to a pro se defendant changing his plea when he recognizes he made a bad decision to represent himself. If we accepted Defendant's arguments in this case, we would be adopting such a rule. We decline to do so.

{43} Finally, Defendant's argument that the plea is invalid because it was obtained without a factual basis is without merit. A court is not required to inquire into whether there is a factual basis for a no contest plea. *See* Rule 5–304(G) NMRA (stating court must inquire and be satisfied

that there is a factual basis for a "plea of guilty or guilty but mentally ill"); *see also* Rule 5–303 committee commentary ("[U]nlike the case in which the defendant pleads guilty, a court need not inquire into whether or not there is a factual basis for the no contest plea."). Moreover, the district judge heard two of the victims testify, and he presided over Defendant's arraignment, where he had a copy of the affidavit for arrest warrant. *See Bielen v. State*, 265 Ga.App. 865, 595 S.E.2d 543, 545 (2004) (stating that despite a failure to establish a factual basis for a guilty plea as required by rule, there is no manifest injustice warranting a guilty plea to be withdrawn after sentence is imposed where there is evidence in the record establishing a factual basis for the crime).

{44} The district judge properly rejected Defendant's attempt to set aside his no contest plea.

### EFFECTIVE ASSISTANCE OF STANDBY COUNSEL

{45} Defendant argues that he was denied his Sixth Amendment Constitutional right to counsel because his counsel refused to perform even the simplest of tasks such as copying cases requested by him, standby counsel's mere passive presence during the trial did nothing to level the playing field, and standby counsel did not take over Defendant's representation during the trial. We review this claim de novo. *See State v. Joanna V.*, 2003–NMCA–100, ¶ 11, 134 N.M. 232, 75 P.3d 832 ("Questions of ineffective assistance of counsel are reviewed de novo."), *aff'd*, 2004–NMSC–024, ¶ 5, 136 N.M. 40, 94 P.3d 783.

{46} Counsel may not be forced upon an accused after he has properly waived his right to counsel and exercised his right to represent himself. *See State v. Lewis*, 104 N.M. 218, 221, 719 P.2d 445, 448 (Ct.App.1986) (recognizing right to represent self on appeal without court-appointed counsel); *Peterson*, 103 N.M. at 642, 711 P.2d at 919 ("Just as surely as a defendant has a right to counsel, he has the right to be free from unwanted counsel."). "However, the trial court may in its discretion, even over the protest of a defendant, appoint 'standby' counsel or advisory counsel to aid defendant

if he requests assistance." *Lewis*, 104 N.M. at 221, 719 P.2d at 448 (quoting *Faretta*, 422 U.S. at 834–35 n. 46, 95 S.Ct. 2525). Standby counsel can also be "available to represent the accused if termination of self-representation [becomes] necessary." *Rotibi*, 117 N.M. at 111, 869 P.2d at 299. Beyond these functions, our cases give little guidance on what the obligations and limitations of standby counsel are.

{47} The role of standby counsel was never clearly expressed in this case. After Defendant waived his right to counsel, the district judge stated that he was considering appointing standby counsel to do things like getting subpoenas issued and served and performing similar functions that are extremely difficult to do by someone in jail. The district judge also stated that standby counsel would assist in assuring that Defendant received complete discovery. Another time, the district judge told Defendant that standby counsel would be present to answer questions Defendant might have, but would not keep Defendant from making a mistake in representing himself. The record does not show what specific instructions, if any, the district judge gave to standby counsel on what his role would be when he was appointed.

{48} Standby counsel was appointed to aid Defendant in his pro se defense. However, there is no federal constitutional right to standby counsel, *see State v. DeWeese*, 117 Wash.2d 369, 816 P.2d 1, 6 (1991) (en banc), and once a defendant has validly waived his right to counsel, he may not later demand the assistance of counsel as a matter of right. *Id.; State v. Canedo–Astorga*, 79 Wash.App. 518, 903 P.2d 500, 504 (1995).

{49} This record only demonstrates that Defendant asked standby counsel to photocopy cases for him and defense counsel was not able to comply with his request, given the volume of cases involved and the limited time. Standby counsel is not to act as an errand runner for a defendant, he is not a defendant's personal paralegal assistant, and he is not required to perform unreasonable, irrelevant, and time consuming errands and research requests. *See Silva,*

27 P.3d at 677. To ensure adequate access to the tools necessary to prepare a defense, we adopt the following standard from *Silva:*

[A] trial court may, upon a proper showing, order standby counsel to do any or all of the following:

1) Act as a liaison between the accused and the court or prosecutor in confirming motions, coordinating discovery, interviews, etc.;

2) Provide forms, including subpoena forms, court forms, etc.;

3) Assist in securing an investigator, if necessary; and

4) Any other duties logically associated with appointed counsel that would satisfy the accused's right of access to tools necessary to prepare an adequate pro se defense.

*Id.* at 678.

{50} This record does not demonstrate Defendant was denied adequate access to the tools necessary to prepare a defense by the actions of his standby counsel. We therefore reject Defendant's arguments under this point.

**CONCLUSION**

{51} We affirm Defendant's judgment and sentence.

{52} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and LYNN PICKARD, Judges.