561 P.2d 472

**William KILPATRICK, M.D., Plaintiff-Appellee,**

v.

**MOTORS INSURANCE CORPORATION, d/b/a CIM Insurance Corporation, Defendant-Appellant.**

**No. 10927.**

Supreme Court of New Mexico.

March 14, 1977.

Sheehan & Sheehan, Timothy M. Sheehan, Albuquerque, for defendant-appellant.

Branch & Coleman, Turner W. Branch, Albuquerque, for plaintiff-appellee.

## OPINION

EASLEY, Justice.

This suit for wrongful denial of insurance coverage was brought by Dr. William Kilpatrick (Kilpatrick) against Motors Insurance Corporation (Motors). The case was tried without a jury, a judgment was entered for Kilpatrick. Motors appeals, and we affirm the judgment of the district court.

On August 14, 1973, Kilpatrick cosigned a note with his son-in-law, Rivier Rodriquez, for the purchase of a 1972 Chevrolet Vega. On the same day, Motors issued an automobile insurance policy to Rodriquez which, among other things, covered the insured for theft. In November, 1974, Mr. Rodriquez told his father-in-law that he was an illegal alien and had been informed by the United States Immigration Service that he would have to leave the country. After returning from a trip just after Thanksgiving, Kilpatrick visited the Rodriquez family and discovered that they had moved from their apartment. However, the Vega was parked at the apartment. One week later, Kilpatrick returned to the apartment to find that the Rodriquezes were still absent and that the car was still parked at the apartment.

When Kilpatrick checked on the car five or six days later, the automobile was missing. He reported the Vega as stolen to the insurance company and filed a police report. Motors denied coverage, alleging that it had no insurance contract with Kilpatrick, that the car had not been shown to be stolen and that the terms of the insurance policy had not been followed.

The trial court found that the 1972 Chevrolet Vega was stolen, that at the time of the theft Kilpatrick had custody of the automobile, and that Kilpatrick timely filed a proof of loss with Motors in compliance with the insurance policy. It then concluded that Kilpatrick was entitled to coverage under the policy.

Motors argues on appeal that the trial court erred in concluding that: (1) the Vega was stolen; (2) Kilpatrick was an insured under the policy; and (3) Kilpatrick complied with the proof of loss provisions of the policy.

Motors argues that the word "theft" as used in an insurance policy should be interpreted in a strict legal sense to require that there be proof of intent to deprive the insured permanently of his car. This requirement would equate "theft" with the crime of larceny. See § 40A–16–1, N.M.S.A.1953.

■ However, in New Mexico the unauthorized taking of a motor vehicle is specifically prohibited by statute. § 64–9–4, N.M. S.A.1953 (Supp.1975). This statute has been expressly held not to require the intent found in larceny—an intent to deprive the owner of his property permanently. *State v. Eckles,* 79 N.M. 138, 441 P.2d 36 (1968). Section 64–9–4 was passed by the Legislature as one of several anti-theft provisions. See ch. 138, § 89, [1953] N.M. Laws 322. These provisions expanded the common law crime of larceny under which it was required that the State prove intent to deprive the owner of his property permanently.

■ New Mexico courts have not heretofore interpreted the word "theft" in an automobile insurance policy. In states with statutes that prohibit the unauthorized taking of a motor vehicle, there is a split of authority as to the interpretation of the word "theft." See Annot., 48 A.L.R.2d 8, §§ 11, 12 (1956). Our policy has been to construe language in contracts of insurance in a reasonable and ordinary manner. *Wesco Insurance Company v. Velasquez,* 88 N.M. 273, 540 P.2d 203 (1975); *King v. Travelers Insurance Company,* 84 N.M. 550, 505 P.2d 1226 (1973). In accordance with this policy we choose to follow a broad interpretation of the word "theft" in an insurance policy. We agree with the Supreme Court of Utah in *P. E. Ashton Company v. Joyner,* 17 Utah 2d 162, 165, 406 P.2d 306, 308 (1965) which recognized a similar anti-theft statute and then added:

> It would seem incongruous for this court to restrict the meaning of "theft" within an insurance policy, which should be liberally construed, to a situation where the taker had an intent to steal and to deprive the owner permanently of his possession, when our legislature has eliminated these elements in an anti-theft statute.

See also *James v. Phoenix Assur. Co.,* 75 Colo. 209, 225 P. 213 (1924); *National Fire Insurance Co. of Hartford v. Slayden,* 227 Miss. 285, 85 So.2d 916 (1956).

We interpret the word "theft" in an automobile insurance policy to mean the taking, without authority, of the property of another. *P. E. Ashton Company v. Joyner, supra.* Moreover, we refuse to set a higher standard for automobile insurance policyholders than that of the State in a prosecution for the unlawful taking of a motor vehicle.

■ The finding by the trial court that the automobile was stolen is supported by substantial evidence. Kilpatrick knew that his son-in-law and daughter were planning to leave the country. When he checked to see if they had in fact left, he found that their possessions had been removed with the exception of the automobile. He testified that he took custody of the automobile and that he intended to be responsible for it. Later the automobile disappeared, and

it was reasonable to conclude that the automobile was stolen.

Motors suspects that the Rodriquezes took the automobile, but this suspicion cannot be substantiated by the evidence. Under these circumstances the determination of whether or not a theft occurred rested with the trier of facts. See 11 R. Anderson, Couch on Insurance 2d § 42:283 (1963), and cases cited therein. The findings of the trial court are supported by substantial evidence and will not be disturbed. *Trujillo v. Glen Falls Insurance Company,* 88 N.M. 279, 540 P.2d 209 (1975); *Shirley v. Venaglia,* 86 N.M. 721, 527 P.2d 316 (1974).

The second contention by Motors is that Kilpatrick was not an insured under the policy. "Insured" is defined in the policy as the named insured, his spouse and "any person or organization maintaining, using or having custody of said automobile with the permission of the named insured and within the scope of such permission." Kilpatrick testified that after he realized that the Rodriquezes had left, he took custody of and assumed responsibility for the automobile. Although he did not have the key to the automobile, he periodically checked to see if it was still at the apartment.

Kilpatrick testified that he cosigned the note and made the down payment on the automobile. When the bank notified him early in December that a payment on the car had not been made, he responded by checking to see if the car was still at the apartment. These acts evidence a determination by Kilpatrick to be responsible for the automobile and to take custody of it when he learned that the Rodriquezes had left town.

The policy provides that the permission of the named insured must be obtained and the person having custody must act within the scope of that permission. Permission may be implied from the conduct of the insured, including lack of objection. *Gruger v. Western Cas. & Surety Co.,* 89 N.M. 562, 555 P.2d 683 (1976). See generally 7 Am.Jur.2d Automobile Insurance § 113

(1963); 12 R. Anderson, Couch on Insurance 2d § 45:352 (1964).

Kilpatrick took reasonable steps to at least safeguard the automobile until the possible return of his daughter and son-in-law. Kilpatrick also testified that Rodriquez knew that his father-in-law was responsible for payments on the car in the event of default. This evidence also suggests that Kilpatrick had the implied permission of Rodriquez to take custody of the automobile. There is substantial evidence to support the finding of the trial court that Kilpatrick had the permission of the named insured, Rivier Rodriquez. Moreover, Kilpatrick performed no act outside the scope of that permission. In conclusion, we hold that the finding of the trial court that Kilpatrick was an insured under the policy is supported by substantial evidence.

Motors' third contention is based upon the failure of Rivier Rodriquez to comply with the terms of the policy in the event of theft. This entire argument is based upon the assumption that Kilpatrick was not an insured under the policy. Since we have held that Kilpatrick is an insured, this argument by Motors is without merit. Kilpatrick immediately reported the theft to Motors, and the finding of the trial court that he substantially complied with the policy is supported by substantial evidence.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, J., and GERALD D. FOWLIE, District Judge, concur.

OMAN, Chief Justice, dissenting.

I feel compelled to dissent from the majority opinion in this case, because I cannot agree that the facts support a finding of custody in Kilpatrick with the permission of Rodriquez, the named insured.

The facts are that Kilpatrick did cosign a note with his son-in-law, Rodriquez, and this note was given as evidence of and to secure payment of at least a part of the purchase price of the automobile. Rodriquez left the automobile parked at the

apartment he and his wife occupied, and not with Kilpatrick. As shown by the majority opinion, Kilpatrick did not know that Rodriquez had left until he had visited the apartment. It was then he found the automobile parked there.

Kilpatrick did nothing to assert control over the vehicle. He had no key thereto and could not drive it away. He made no effort to otherwise remove the vehicle to his place or any other place for safekeeping, and he took no measures to exercise control over or to secure the safekeeping of the vehicle. He went back to the apartment about a week later and found the vehicle still sitting there. Again he did nothing to exercise control over or to secure the safekeeping of the vehicle. On his third visit, which was five or six days later, the vehicle had disappeared. It is true he testified he took custody of the automobile, but I can find no action on his part which would in any way so indicate. Surely the taking of custody of property under the circumstances here present requires more than the mere formation of an intent. There was not the slightest effort to exercise control over or to effect safekeeping of the vehicle.

Kilpatrick saw it sitting there and left it sitting there with nothing more, except his claimed intent to take custody.

Likewise, I cannot agree that Rodriquez gave permission to Kilpatrick to take custody. Rodriquez obviously took the key to the vehicle with him—or at least he did not offer or give it to Kilpatrick—and he left the vehicle at his apartment without knowledge on the part of Kilpatrick that he, Rodriquez, had left and was leaving the vehicle parked at the apartment. The majority rely upon implied consent. They do so on the ground that Rodriquez did not object. To what could he object? The most Kilpatrick had done was to see the vehicle parked at Rodriquez' apartment on two occasions and, according to him, had decided to take custody. There is nothing to even suggest that Rodriquez knew Kilpatrick had seen the vehicle so parked on the two occasions or had formed the intent to take custody. Even if Rodriquez had known, what was there to which he could object or which would even suggest the need for objection? The fact that Kilpatrick had cosigned the note, cannot, in my opinion, in any way be construed as implying permission on the part of Rodriquez for Kilpatrick to take custody of the automobile. Rodriquez did absolutely nothing from which his consent to give custody of the automobile to Kilpatrick could be implied.

The terms "custody" and "permission" must be given their ordinary meaning, because they are not ambiguous terms and are not used ambiguously in the policy of insurance. *King v. Travelers Insurance Company,* 84 N.M. 550, 505 P.2d 1226 (1973). For the plain and ordinary meaning of custody, see Webster's Third New International Dictionary 559 (3d ed. 1961). For the plain and ordinary meaning of permission, see Webster's Third New International Dictionary 1683 (3d ed. 1961).

Because I can find no custody, and certainly no custody with permission, I respectfully dissent from the majority opinion.