This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    NO.  32,570

**KURT VUKONICH,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Gary K. King, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

**{1}** Defendant appeals from his convictions for the unlawful taking of a motor vehicle, two counts of larceny, and one count of tampering with evidence. The convictions arose from an incident in which Defendant took a work truck and its contents (a sweater), along with an air compressor hitched to the truck. On appeal, Defendant argues that (1) there was insufficient evidence to support any of the convictions except for larceny of the sweater, (2) double jeopardy precludes multiple theft convictions stemming from this single incident, (3) he received ineffective assistance of counsel, and (4) the State failed to prove that Defendant was subject to sentencing enhancement as a habitual offender. Because Defendant's right to be free from double jeopardy was violated, we reverse Defendant's conviction for the unlawful taking of the work truck. In all other respects, we affirm.

**BACKGROUND**

**{2}** On August 2, 2011, at around 7:40 a.m., a Ford F-250 paint truck, owned by Four-Four Inc. ("Four-Four") and assigned to Alfred Segovia, a company painter, was taken from outside a paint store in Farmington, New Mexico. An air compressor was mounted on a trailer securely hitched to the truck, and Segovia's yellow sweater was inside the cab. When Segovia exited the paint store, he saw a man pulling Segovia's yellow shirt on over an orange shirt as the man fled the parking lot in the paint truck. Segovia later identified the man as Defendant. The truck was recovered at

approximately 8:00 a.m. in the lot of a nearby church. Segovia's yellow sweater was no longer in the cab, but the company's air compressor remained securely attached to the vehicle.

{3} At trial, a Farmington police officer and a FBI agent testified to various sightings of Defendant donning an orange shirt or a yellow sweater and walking about the streets of Farmington between 7:30 and 8:10 a.m. on the morning in question. At around 7:30, before the truck was taken, Officer Shefton Kennedy saw Defendant on foot, wearing an orange shirt. Thirty minutes later, after the truck was reportedly abandoned, Officer Kennedy again saw Defendant on foot, now wearing a yellow pullover shirt that matched the description of Segovia's sweater. At around the same time, Special Agent William Hall separately saw a man dressed in a yellow sweater bolt in front of Hall's car.

{4} Officer George Joy testified that he was dispatched to search for Defendant at around 8:00 a.m. Officer Joy eventually apprehended Defendant, now shirtless and wearing wet blue jeans. Defendant testified at trial that he never took the truck, that he spent the early hours of that morning visiting his attorney's office, and that he was found wearing wet pants and no shirt because he had been in a ditch gathering aquatic plants for his aquarium when he was confronted by police. The jury convicted Defendant on all counts.

3

# DISCUSSION

## A.      Sufficiency of the Evidence

{5}      Defendant argues that there was insufficient evidence to support his convictions for larceny of the air compressor, the unlawful taking of the truck, and tampering with evidence by disposing of the yellow sweater.  The standard of review for sufficiency of the evidence is highly deferential.  *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930.  We view the evidence "in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *Id.*  We "do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285.  It remains, however, the "independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Vigil*, 2010-NMSC-003, ¶ 4, 147 N.M. 537, 226 P.3d 636 (internal quotation marks and citation omitted).  We must therefore "determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Dowling*, 2011-NMSC-016, ¶ 20 (internal quotation marks and citation omitted).

4

## 1. Larceny of the Air Compressor

{6} Larceny is defined as "the stealing of anything of value that belongs to another." NMSA 1978, § 30-16-1(A) (2006). While Section 30-16-1 contains no language indicating that larceny is a specific intent crime, our appellate courts have designated it as such in light of the common law understanding of "stealing." *See State v. Paris*, 1966-NMSC-039, ¶¶ 16-18, 76 N.M. 291, 414 P.2d 512; *State v. Diaz*, 1983-NMCA-091, ¶ 18, 100 N.M. 210, 668 P.2d 326 (stating that specific intent is an essential element of the crime of larceny). Similarly, our case law incorporates an asportation element into the larceny statute, requiring that "a stolen item be carried away." *State v. Clark*, 2000-NMCA-052, ¶ 12, 129 N.M. 194, 3 P.3d 689. Thus, to find Defendant guilty of larceny of the compressor, the jury had to find (1) that Defendant "took and carried away an Ingersoll Rand Air Compressor belonging to another, which had a market value of over $2,500" and (2) that at the time he took the property, Defendant "intended to permanently deprive the owner of it[.]" *See* UJI 14-1601 NMRA. On appeal, Defendant argues that neither element was met. Defendant contends first that the State did not prove that he "carried away" the compressor, and second, that the State did not introduce any evidence that Defendant intended to permanently deprive the owner of the compressor or viewed it as anything other than an attachment to the truck, which was taken for a joyride. We do not agree.

**a.   "Carried Away"**

{7}   The jury was instructed that "carried away" means "moving the property from the place where it was kept or placed by the owner." UJI 14-1603 NMRA. Since the air compressor was attached to the truck, Defendant argues that he could not have carried it away without removing it from the truck. Defendant does not cite any support for this suggested interpretation, and we therefore assume that none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482. In fact, we have previously applied a broad understanding of larceny's asportation requirement:

> [T]he word 'carrying' in the expression 'carrying away' (the common law requirement of an asportation) is not to be taken literally, for one can be guilty of larceny of property which he cannot pick up in his hands, as by riding away a horse, leading away a cow, driving off in an automobile or pulling or pushing a heavy object along the ground.

*Clark*, 2000-NMCA-052, ¶ 13 (quoting 2 Wayne R. LaFave & Austin W. Scott Jr., *Substantive Criminal Law* § 8.3(b), at 346 (1986)). In the absence of any authority to the contrary, the jury's determination that Defendant drove away with the compressor is legally sufficient to constitute an asportation.

**b.   "Intent to Permanently Deprive"**

{8}   The jury was instructed on the element of specific intent required for larceny, which is the "inten[t] to permanently deprive" the owner of his property. UJI-14-1601 NMRA; *State v. Eckles*, 1968-NMSC-079, ¶ 10, 79 N.M. 138, 441 P.2d 36. Our state

6

has no uniform jury instruction defining this element, and Defendant did not propose any definitional instruction at trial. Nor has Defendant attempted to define the element on appeal. Instead, Defendant argues that the jury could not have found the requisite intent for larceny since the State introduced no evidence that Defendant attempted to remove the compressor from the truck or hide the truck with the compressor attached.

{9} Our case law allows the jury to infer intent. *State v. Roybal*, 1960-NMSC-012, ¶ 6, 66 N.M. 416, 349 P.2d 332 ("While intent is essential and must be established in larceny cases, it may be inferred by the jury from the facts and circumstances established at the trial."). "Circumstantial evidence of intent is sufficient . . . if it can be said that it amounts to substantial evidence." *State ex rel. Huning v. Los Chavez Zoning Comm'n*, 1982-NMSC-024, ¶ 7, 97 N.M. 472, 641 P.2d 503. We can locate no authority, and Defendant has cited none, that sets any boundaries on the facts from which the jury may infer the specific intent element of larceny. The State presented evidence at trial, through the testimony of Segovia and various law enforcement personnel, that Defendant took a work truck and its attached compressor and parked it in a church parking lot before fleeing on foot. The jury could have inferred from these facts that Defendant hid the truck in the parking lot, intending to return later, or only abandoned his plan to keep the stolen items after noting that law enforcement

was in hot pursuit.  Given the existence of reasonable inferences, there is sufficient evidence that Defendant committed larceny of the air compressor.

**2.      Unlawful Taking of a Motor Vehicle**

{10}    Defendant next argues that the jury was presented with insufficient evidence to support a conviction for the unlawful taking of a motor vehicle.  Unlawful taking of a motor vehicle "consists of a person taking any vehicle . . . intentionally and without consent of the owner."  NMSA 1978, § 30-16D-1(A) (2009).  Defendant's sole contention on appeal is that the State failed to prove the element of absence of consent.

{11}    At trial, the State introduced testimony that the truck belonged to Four-Four; that Segovia was the authorized operator of the truck, which was specifically assigned to him; that Segovia did not believe that Defendant had permission to take the truck; and that Segovia had a friend call 911 when the truck was taken. The State also called Four-Four's security superintendent who testified that the company needed the truck and compressor back from police right away because Four-Four "had work for them to do."  Defendant argues as a matter of law that the owner of a company vehicle, rather than its authorized operator, is required to testify to this element.  We are not persuaded.  As Defendant points to no authority to support this proposition, we again assume that none exists. *See Curry*, 2014-NMCA-031, ¶ 28.  The argument actually

8

conflicts with our standard of review which permits the jury to draw reasonable inferences from facts in the record. *Graham*, 2005-NMSC-004, ¶ 13. Viewed in the light most favorable to the State, Segovia's testimony that the truck was taken without authorization provides a sufficient basis for a jury to infer that Defendant did not take the truck with Four-Four's consent. Accordingly, there was sufficient evidence to convict Defendant of the unlawful taking of a motor vehicle.

**3.    Tampering with Evidence**

{12}    Defendant next argues that evidence was insufficient to support a tampering conviction based solely on the disappearance of Segovia's sweater. In order to find Defendant guilty of tampering with evidence, the jury was instructed to find (1) that Defendant "hid or placed a yellow sweater" and (2) that Defendant did so "intend[ing] to prevent the apprehension of himself[.]" *See* UJI 14-2241 NMRA.

{13}    Our Supreme Court has recently confirmed the "bedrock principle" that "[t]he State cannot convict [a defendant] of tampering with evidence simply because evidence that must have once existed cannot now be found." *State v. Guerra*, 2012-NMSC-027, ¶ 16, 284 P.3d 1076; *see also State v. Silva*, 2008-NMSC-051, ¶ 19, 144 N.M. 815, 192 P.3d 1192 (holding that police inability to find a murder weapon is insufficient evidence to convict the defendant of tampering); *State v. Duran*, 2006-NMSC-035, ¶ 15, 140 N.M. 94, 140 P.3d 515 (same).

9

{14}     In this case, however, the evidence is not merely that police were unable to find Segovia's sweater. In fact, evidence presented at trial establishes numerous overt acts committed by Defendant with respect to the discarded sweater. Segovia testified at trial that he saw Defendant putting his yellow sweater on over an orange shirt as he drove away in the truck. Officer Kennedy corroborated Segovia's testimony, noting that he had seen Defendant in an orange shirt before the truck was taken and in a yellow sweater after the truck was abandoned. Special Agent Hall, Officer Joy, and Defendant all testified that Defendant was shirtless when apprehended. Pursuant to our deferential standard of review and our mandate to permit all reasonable inferences in support of the verdict, *see Dowling*, 2011-NMSC-016, ¶ 20, this testimony was sufficient for the jury to conclude that Defendant abandoned the truck wearing Segovia's sweater, and then hid or destroyed the sweater to avoid apprehension or disrupt the criminal investigation. *See* UJI 14-2241.

**B.     Double Jeopardy**

{15}     Defendant makes two double jeopardy arguments. First, Defendant argues that double jeopardy was violated by his separate convictions for taking the truck and the compressor that was attached to it. Second, Defendant argues that double jeopardy was violated by his separate convictions for larceny of both the sweater and the

compressor. We review these issues de novo. *State v. Quick*, 2009-NMSC-015, ¶ 6, 146 N.M. 80, 206 P.3d 985.

{16} The Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution each protect defendants against multiple punishments for the same offense. *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 38, 136 N.M. 309, 98 P.3d 699. There are two types of multiple punishment cases: unit-of-prosecution cases, in which an individual is convicted of multiple violations of the same criminal statute, and double-description cases, in which a single act results in multiple convictions under different statutes. *See Swafford v. State*, 1991-NMSC-043, ¶¶ 8-9, 112 N.M. 3, 810 P.2d 1223. Defendant's argument with respect to the unlawful taking of a motor vehicle and larceny convictions, which are two separate statutes, requires a double-description analysis, while Defendant's argument with respect to multiple larceny convictions is properly analyzed according to the unit-of-prosecution framework. *See id.*

**1.     Double-Description**

{17} Our state has adopted a two-part inquiry for double-description claims. *State v. Gutierrez*, 2011-NMSC-024, ¶ 51, 150 N.M. 232, 258 P.3d 1024. First, we analyze the factual question, "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes," and second, the legal question,

11

"whether the [L]egislature intended to create separately punishable offenses." *Id.* (internal quotation marks and citation omitted). "If it reasonably can be said that the conduct is unitary, then [we] must move to the second part of the inquiry. Otherwise, if the conduct is separate and distinct, [the] inquiry is at an end." *Swafford*, 1991-NMSC-043, ¶ 28.

### a.    Unitary Conduct

{18}    "[W]e will find that conduct is not unitary when the illegal acts are separated by sufficient indicia of distinctness." *State v. Mora,* 2003-NMCA-072, ¶ 18, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation committed). Relevant considerations include the quality and nature of the individual acts, their objectives and results, and their separation in time or physical distance. *Id.* "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted).

{19}    The jury could not have reasonably inferred that taking the truck and its attached compressor constituted two separate acts. The State proved at trial that Defendant took both items at the same time, from the same place, belonging to the same owner, and then abandoned the items together in a church parking lot. The State

12

introduced no evidence that Defendant, at any point, treated the compressor differently from the truck. During closing argument, the State invited the jury to convict Defendant of both crimes separately based on a single act:

> I don't want anyone to be wondering 'well, he took the truck and the compressor is attached to the truck, is that the same thing?' And according to our Legislature, it's not because one charge is taking a motor vehicle and for whatever reason, the Legislature determined taking someone's motor vehicle is a separate thing.

According to the State's theory at trial, Defendant's taking of the truck and its attached compressor supported both statutory offenses. They were thus necessarily unitary. *See Gutierrez*, 2011-NMSC-024, ¶ 54 (explaining that "when the same conduct supports two different statutory offenses, there is no way for the conduct *not* to be unitary" (internal quotation marks and citation omitted)).

{20}     Nonetheless, the State argues that the jury could have inferred that Defendant harbored a separate intent with regard to the contents of the truck, as opposed to the truck itself, indicating distinct conduct for double jeopardy purposes. However, for the jury to make this inference, the State would have had to present some evidence to support it during the trial. *See State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 ("[T]his court has made clear that an inference must be linked to a fact in evidence."), *cert. granted*, 2014-NMCERT-008, 334 P.3d 425. While the State argues on appeal about what Defendant's intentions may have been, our review for unitary conduct is

limited, "to a large degree[,]" by the elements of the charged offenses and the facts presented at trial. *See Swafford*, 1991-NMSC-043, ¶ 27. Given the facts actually presented to the jury, we conclude that Defendant's convictions for both the unlawful taking of the truck and larceny of the compressor were based on unitary conduct.

**b.      Legislative Intent**

{21}      Our conclusion that Defendant's conduct was unitary does not end the analysis. We must consider whether the Legislature intended Sections 30-16-1(A) and 30-16D-1(A) to provide for separate punishment. *See State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747. Since the statutes themselves do not expressly prescribe multiple punishments, the rule of statutory construction established in *Blockburger v. United States*, 284 U.S. 299 (1932) applies. *See id.*

{22}      However, in cases where one of the convictions arises from a "generic, multipurpose statute[,]" we do not apply a strict elements test in the abstract, rather we apply our modified *Blockburger* approach, looking to the State's actual theory of the case to determine whether one conviction was subsumed by the other. *Gutierrez*, 2011-NMSC-024, ¶¶ 58-59. In *Gutierrez*, our Supreme Court determined that the modified *Blockburger* test applied in a case involving convictions for the unlawful taking of a motor vehicle and robbery. *Id.* The Court explained that the robbery statute was a "generic, multipurpose" statute because it criminalized the theft of

14

"anything of value." *Id.* Because our generic larceny offense is a lesser included offense of robbery, *State v. Wingate*, 1975-NMCA-035, ¶ 10, 87 N.M. 397, 534 P.2d 776, identically criminalizing the theft of "anything of value," we must also apply the modified *Blockburger* test here. *Compare* § 30-16-1(A) (larceny), *with* § 30-16-2 (robbery).

{23} Applying *Gutierrez*, we consider the State's actual theory at trial in order to identify the case-specific meaning of larceny's generic term, "anything of value." 2011-NMSC-024, ¶¶ 58-59. As discussed previously in this Opinion, the State's theory required, for all practical purposes, that it prove the taking of the truck in order to prove larceny of the compressor. However, we must take care in our analysis not to conflate the modified *Blockburger* test with the type of fact-sensitive double jeopardy inquiry that was rejected in *Swafford*. *See Gutierrez*, 2011-NMSC-024, ¶ 78 (Bosson, J., specially concurring) (warning that courts applying the modified *Blockburger* test should generally avoid looking beyond the indictment and jury instructions to ascertain the State's trial theory). The criminal information and jury instructions in this case both specify that "anything of value" for purposes of the larceny charge meant an Ingersoll Rand Air Compressor, and not a truck. Thus, larceny's generic element required the State to prove that a compressor was taken,

15

which differs from proof that a motor vehicle was taken. As such, the elements in the two statutes differ, and the modified *Blockburger* test alone fails to resolve the issue.

{24} When two statutes survive the *Blockburger* test, we must look to "the language, history, and subject of the statutes, and we must identify the particular evil sought to be addressed by each offense." *State v. Montoya*, 2013-NMSC-020, ¶ 32, 306 P.3d 426 (internal quotation marks and citation omitted). "If several statutes are not only usually violated together, but also seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution[,]" rather than cumulative punishment. *Swafford*, 1991-NMSC-043, ¶ 32.

{25} The unlawful taking of a motor vehicle statute was passed by the Legislature as "one of several anti-theft provisions[,]" designed to expand the crime of larceny, which required the State to prove a defendant's specific intent. *Kilpatrick v. Motors Ins. Corp.*, 1977-NMSC-019, ¶ 6, 90 N.M. 199, 561 P.2d 472. The statutes, protecting the same "anti-theft" interest, were thus apparently designed to function as alternative means of prosecution. *See Swafford*, 1991-NMSC-043, ¶ 32.

{26} Furthermore, the unlawful taking of a motor vehicle will rarely, if ever, be committed without larceny also being committed with respect to something in or attached to the vehicle. As we have explained in this Opinion, there are few apparent

limitations on the jury's ability to infer the specific intent required for larceny, leaving defendants at risk of cumulative punishment in nearly every auto theft case. If we were to uphold cumulative prosecution under these circumstances, the State would be authorized to strategically draft its indictments such that dual punishment becomes available for (1) the unlawful taking of the vehicle and (2) larceny of the contents of the vehicle, including attached items, such as the stereo and spare tire. This cannot be what the Legislature intended. *See Swick*, 2012-NMSC-018, ¶ 13 ("Legislative intent may be gleaned [by] . . . determining whether the statutes are usually violated together[.]" (alteration, internal quotation marks and citation omitted)). As our Supreme Court has explained, "a prosecutor should not be allowed to defeat the constitutional protections afforded by the double jeopardy clause by clever indictment drafting." *Id.* ¶ 25 (internal quotation marks and citation omitted). For these reasons, we conclude that Defendant's right to be free from double jeopardy was violated by his convictions under Sections 30-16-1(A) and 30-16D-1(A). We therefore vacate Defendant's conviction for the unlawful taking of a motor vehicle, which imposes the lesser sentence. *See Montoya*, 2013-NMSC-020, ¶ 55.

**2.      Unit-of-Prosecution**

{27}      Defendant next argues that the State could not have convicted him of larceny of both the sweater and the compressor, based on a single theft. This implicates a

17

unit-of-prosecution analysis to determine "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford*, 1991-NMSC-043, ¶ 8. Our Supreme Court has interpreted the larceny statute such that all "generic" property, i.e., all property excluding firearms and livestock, is considered a single unit of prosecution, "with gradations of punishment based on the monetary value of the property[.]" *Alvarez-Lopez*, 2004-NMSC-030, ¶ 41; *see also State v. Brown*, 1992-NMCA-028, ¶¶ 6-13, 113 N.M. 631, 830 P.2d 183 (recognizing the related "single larceny doctrine" which prohibits separate theft convictions stemming from a single criminal episode). However, multiple theft convictions will not violate double jeopardy if "the defendant commits two discrete acts . . . separated by sufficient indicia of distinctness[.]" *See Swafford*, 1991-NMSC-043, ¶ 26. "Thus, for example, the double jeopardy clause does not bar separate convictions and sentences for two thefts from the same victim committed on separate days, even though the statutory offenses are identical." *Id.*

**{28}** We conclude that Defendant committed two separate thefts. Witnesses testified at trial that Defendant was wearing the sweater after the truck and compressor were abandoned. The State thus presented evidence that Defendant completed the crime of larceny of the compressor by taking and abandoning it in the church parking lot, and that Defendant then separately committed the crime of larceny of the sweater by

18

exiting the vehicle with the sweater and fleeing on foot. We note that the jury also found Defendant guilty of tampering with evidence, which it could not have done without making a factual determination that Defendant took the sweater out of the truck. *See* UJI 14-2241. Thus, the conviction for larceny of the sweater may squarely rest on the jury's finding that the sweater was removed from the truck, conduct that is distinct from the theft of the compressor, and our double jeopardy analysis ends. *See Swafford*, 1991-NMSC-043, ¶ 26 ("[T]he double jeopardy clause clearly cannot operate to prohibit prosecution, conviction, and punishment in a single trial for discrete acts violative of the same statute[.]").

**C.      Ineffective Assistance of Counsel**

{29}    Defendant makes two arguments related to ineffective assistance of counsel: (1) that his attorney had a conflict of interest, violating Defendant's right to conflict-free counsel, and (2) that his attorney's performance fell below that of a reasonably competent attorney. Defendant therefore requests that we reverse all of his convictions and order a retrial.

{30}    "When the [S]tate secures a criminal conviction through a trial in which the defendant is without adequate legal assistance, the [S]tate unconstitutionally deprives the defendant of his liberty." *State v. Martinez*, 2001-NMCA-059, ¶ 22, 130 N.M. 744, 31 P.3d 1018 (internal quotation marks and citation omitted). "Legal assistance

19

falls below constitutional standards" when defense counsel deprives the accused of either undivided loyalty or reasonable competence in representation. *Id.* ¶¶ 22-24.

**1.     Undivided Loyalty**

**{31}**     Defendant first contends that his defense was adversely affected by a conflict of interest resulting from pending disciplinary complaints that Defendant filed against his attorney.   According to Defendant, it was in his attorney's "interest for [Defendant] to be portrayed as an unreasonable liar" in front of the jury, and the disciplinary complaints "took away any incentive defense counsel had to actually substantiate [Defendant's] defense." In other words, Defendant's attorney purportedly had a personal interest in making Defendant "c[o]me off as a liar[,]" which would undermine the credibility of Defendant's complaints to the disciplinary board.  We review this issue de novo. *State v. Vincent*, 2005-NMCA-064, ¶ 4, 137 N.M. 462, 112 P.3d 1119.

**{32}**     We have previously "recognized the duty of loyalty to the client and have admonished counsel to avoid conflicts of interest." *Martinez*, 2001-NMCA-059, ¶ 24; *see also* Rule 16-107(B) NMRA (2001) ("[A] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's . . . own interests."). "When the record demonstrates that an actual conflict rendered counsel's assistance ineffective, prejudice is presumed, and the claim can be addressed for the

20

first time on appeal." *Vincent*, 2005-NMCA-064, ¶ 4. "[T]here must be an actual, active conflict that adversely affects counsel's trial performance; the mere possibility of a conflict is insufficient." *Id.*

{33} Defendant has not demonstrated that his trial attorney had an actual, active conflict of interest. Contrary to Defendant's assumption, it is not necessarily in the interest of an attorney under disciplinary investigation to undermine a client's defense. In fact, the opposite is true. The disciplinary board has the authority to reprimand and report attorneys to our Supreme Court for violating the Rules of Professional Conduct, *see* Rule 17-102 NMRA, including the requirement that attorneys act "with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Rule 16-103 cmt. 1 NMRA. An attorney already under investigation may even be subject to summary suspension if disciplinary counsel believes that the attorney's continued practice of law will result in a substantial probability of harm, loss, or damage to the public. *See* Rule 17-207 NMRA. Defendant's attorney thus had every incentive to provide professional representation on behalf of his clients, particularly on behalf of Defendant, who had initiated the disciplinary complaint. Since we do not agree that the filing of disciplinary complaints by a client against his attorney automatically creates a conflict of interest, and since Defendant has not actually explained how or when his attorney "portrayed

[Defendant] as an unreasonable liar" to the jury, we conclude that Defendant's argument is without merit. *See Martinez,* 2001-NMCA-059, ¶ 24 ("[T]he mere possibility of a conflict is insufficient.").

**2.    Reasonable Competence**

{34}    Defendant next argues that his attorney's performance was deficient. The record on appeal generally does not provide enough information to resolve such a claim. *State v. Bernal*, 2006-NMSC-050, ¶ 33, 140 N.M. 644, 146 P.3d 289. Instead of remanding the case to the district court for further hearings, our appellate courts "ha[ve] a general preference that such claims be brought and resolved through habeas corpus proceedings." *Id.* Thus, on direct appeal, we will only remand to the district court for evidentiary proceedings when a defendant presents a prima facie case of ineffective assistance of counsel. *Id.*

{35}    To meet this burden, Defendant must demonstrate that "his attorney's conduct fell below that of a reasonably competent attorney and that the ineffective performance prejudiced him[.]" *State v. Baca*, 1997-NMSC-059, ¶ 24, 124 N.M. 333, 950 P.2d 776. Defendant is required to "point to specific lapses by his trial counsel" and "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Contreras*, 2007-NMCA-045, ¶ 28, 141 N.M. 434, 156 P.3d 725 (internal quotation marks and

22

citation omitted). Otherwise, counsel is presumed competent. *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127.

**{36}** Defendant points to numerous lapses by his attorney. Specifically, Defendant contends that his attorney failed to conduct an adequate pre-trial investigation and failed to subpoena essential witnesses who purportedly would have testified that Defendant did not take the truck with criminal intent. Defendant also contends that his attorney should have cross-examined more of the State's witnesses and requested a directed verdict on the double jeopardy and sufficiency of the evidence issues raised in this appeal. Finally, Defendant argues that his attorney should have clarified to the jury panel at voir dire that Defendant was not a white supremacist, contrary to a statement made by a prospective juror who was excused for cause.

**{37}** First, Defendant cannot demonstrate that his attorney's failure to raise double jeopardy and sufficiency of the evidence issues in a motion for directed verdict resulted in prejudice. The argument is moot since we have already vacated Defendant's conviction for the unlawful taking of a motor vehicle, the only claim with merit. *See State v. Ortega*, 2014-NMSC-017, ¶ 54 n.2, 327 P.3d 1076.

**{38}** Second, Defendant's contention that witnesses should have been called to testify that Defendant took the truck without requisite criminal intent is untenable. At his sentencing hearing, Defendant asserted for the first time that he took the truck

because he believed that his roommate was the driver, and Defendant wanted to get back at his roommate for taking Defendant's girlfriend out all night. Defendant stated that "at no point did [he] intend to deprive the company of the vehicle." Now on appeal, Defendant suggests that his attorney should have called his roommate and the owner of Four-Four to testify to this effect.

{39} Even assuming—without any support in the record—that Defendant communicated this strategy to his attorney before trial and that the proposed witnesses would have testified as Defendant describes, Defendant's trial attorney would have been justified in declining to call the witnesses as their testimony would have been inconsistent with Defendant's testimony that he did not take the truck. *See Bernal*, 2006-NMSC-050, ¶ 32 ("If any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable.").

{40} Defendant's third contention is similarly flawed. At voir dire, a juror accused Defendant of being a white supremacist, based solely on the way Defendant looked. The court immediately excused the juror for cause. The court and the State both clarified that the jury should not be judging Defendant's appearance, but should instead be judging the sufficiency of the State's evidence. At the jury selection conference, Defendant's attorney denied the court's offer to issue a curative instruction, stating that the court's and the State's admonishment was sufficient and

24

appropriate. Since Defendant's attorney had a plausible, rational strategy of electing not to draw unnecessary attention to the comment, we conclude that refusing the curative instruction was not ineffective assistance of counsel. *See Bernal*, 2006-NMSC-050, ¶ 32; *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 ("A prima facie case for ineffective assistance of counsel is not made if there is a plausible, rational strategy or tactic to explain the counsel's conduct." (internal quotation marks and citation omitted)).

{41} Finally, the record is insufficient to substantiate the remainder of Defendant's various claims. Regarding Defendant's argument that his attorney failed to conduct an adequate pre-trial investigation, the record indicates, and Defendant acknowledges that Defendant's attorney hired an investigator to work on the case. Defendant argues that a continuance should have been requested to give the investigator time to pursue Defendant's "leads." Neither Defendant's appellate brief nor the record clarifies what those leads might have been or how they could have prevented Defendant's conviction despite Segovia's eyewitness testimony and the testimony of two law enforcement officers linking Defendant to Segovia's sweater and, by implication, the paint truck.

{42} Similarly, Defendant's argument that his attorney should have cross-examined Segovia and other witnesses is without support in the record. As set forth above, the State presented ample evidence to convict Defendant on every count. Defendant has

25

not shown how his attorney could have countered the State's case, and we decline to review such an undeveloped argument. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181. Defendant's attorney chose not to cross-examine Segovia and other witnesses for reasons that are not part of the record, and we "will not attempt to second guess trial counsel on appeal." *State v. Helker*, 1975-NMCA-141, ¶ 9, 88 N.M. 650, 545 P.2d 1028; *see State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("When [a claim of] ineffective assistance [of counsel] is first raised on direct appeal, we evaluate the facts that are part of the record.").

**{43}** We conclude that Defendant has not presented a prima facie case of ineffective assistance of counsel. This decision does not preclude Defendant from pursuing relief through habeas corpus.

**D. Habitual Offender Sentencing Enhancement**

**{44}** Defendant's final claim is that the State failed to submit proof establishing that Defendant's prior felony conviction from 1997 was within the ten year range required by the habitual offender statute. The statute provides that a prior felony conviction can enhance a sentence when less than ten years have passed since "the person completed serving his sentence or period of probation or parole for the prior felony, whichever is later[.]" NMSA 1978, § 31-18-17(D)(1) (2003). To establish habitual offender status, the State must make a prima facie case at sentencing, demonstrating

that the defendant has prior convictions subject to the statute, and the defendant can then offer contrary evidence. *Contreras*, 2007-NMCA-045, ¶ 15. "The standard of proof for the State's evidence is a preponderance of the evidence." *State v. Simmons*, 2006-NMSC-044, ¶ 10, 140 N.M. 311, 142 P.3d 899. We review the district court's conclusion that the habitual offender enhancement applies for substantial evidence, giving deference to the findings of the district court. *Id.*

{45}    At Defendant's sentencing hearing, the district court and Defendant's attorney were presented with a "prior pack," apparently indicating that Defendant was convicted of prior felonies in 1997 and 2005, and that Defendant completed his sentence, period of probation, or period of parole on the 1997 convictions within the previous ten years. Defendant's attorney reviewed the documents, conceding that they presented a strong prima facie case that Defendant was eligible for sentencing enhancement as a habitual offender. Defendant confirmed that all dates, cause numbers, counties, and all other information in the prior pack accurately reflected Defendant's prior convictions and sentences. The court then "enter[ed] an admission" that Defendant was subject to the habitual offender enhancement.

{46}    On appeal, Defendant argues that, despite his admission at sentencing, since the State has not entered the prior pack into the record, this Court cannot review the evidence relied upon by the district court and must therefore vacate Defendant's

27

sentence and remand the case to the district court for resentencing. According to Defendant, *State v. Lopez*, 2009-NMCA-127, 147 N.M. 364, 223 P.3d 361, compels this result.

**{47}** In *Lopez*, the State sought to enhance the defendant's DWI sentence by proving prior DWI convictions, pursuant to New Mexico's graduated DWI sentencing scheme. *Id.* ¶ 36. At sentencing, the State presented a document to the district court that was never designated as an exhibit or included in the record. *Id.* ¶ 37. The transcript of the sentencing hearing described the document as a copy of a prior judgment and sentence reflecting that the defendant had previously admitted to at least six prior DWI convictions. *Id.* The defendant's attorney challenged the veracity of the document, and the district court reviewed its own records to confirm that the prior convictions were accurate. *Id.* ¶¶ 38-40. We held that this uncertified document, which "relied on plea agreement admissions of other convictions[,]" was insufficient to establish a prior DWI conviction, particularly because it was not in the record and was unavailable for review on appeal. *Id.* ¶ 43. We also recognized that it was inappropriate for the district court to review court records and take judicial notice of the defendant's prior convictions. *Id.* ¶ 44. We reasoned that the district court's willingness to review its own records could not cure the State's failure to present a prima facie case. *Id.*

28

**{48}**      *Lopez* is inapposite to the present case. Defendant here conceded at sentencing that the State presented a prima facie case and that all information in the prior pack was accurate. In *Lopez*, we expressly held that "records of prior convictions must be properly admitted into the record and available for review on appeal, *unless such proof is stipulated to or otherwise waived* by [the d]efendant." *Id.* ¶ 43 (emphasis added). Defendant's express concession at sentencing that all information was accurate and his attorney's statement that the State presented a "strong" prima facie case constitutes the type of stipulation to the State's proof that was contemplated in *Lopez.* Accordingly, there was no need to admit the records relied upon into evidence. Thus, on the record before us, we conclude that the State submitted sufficient proof to establish that Defendant was eligible for sentencing enhancement as a habitual offender.

**CONCLUSION**

**{49}**      For the foregoing reasons, we vacate Defendant's conviction for the unlawful taking of a motor vehicle and affirm on all other grounds.

**{50}** **IT IS SO ORDERED.**

 

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**TIMOTHY L. GARCIA, Judge**